UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                              Chapter

Heritage Realty Associates Corp.,                  Case No. 15-41859-cec

                            Debtor(s).
------------------------------------------------------------x

Heritage Realty Associates Corp., Anthony Donadio,
and Kathleen Donadio                                  Adv. Pro. No. 15-01183-cec

                            Plaintiffs,

      v.

First Citizen's Bank, Chartwell Law Group, US Small
Business Administration, Clay Cain, Michael Meyer,
Robert Murtagh, John J Winter, Ashley Hou, John Doe,
ABC Corp., and Ron Hanskie

                            Defendants.
------------------------------------------------------------x

## DECISION

### APPEARANCES

| | |
|---|---|
| Nicole Perskie | John J. Winter |
| The Law Offices of Weber and Perskie | The Chartwell Law Offices, LLP |
| 60 Dutch Hill Road, Suite 11B | Valley Forge Corporate Center |
| Orangeburg, New York 10962 | 970 Rittenhouse Road, Suite 300 |
| *Attorneys for Plaintiffs* | Eagleville, Pennsylvania 1940 |
| | *Attorneys for Defendant, First Citizens Bank* |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This adversary proceeding was brought by Heritage Realty Associates Corp. ("Heritage") and its principals Anthony and Kathleen Donadio (together the "Donadios") against First Citizen's Bank ("FCB"), Chartwell Law Group, US Small Business Administration, Clay Cain, Michael Meyer, Robert Murtagh, John J Winter, Ashley Hou, John Doe, ABC Corp., and Ron Hanskie, to avoid a transfer of real property, which was allegedly fraudulently transferred for the benefit of FCB. Heritage and its principals filed the complaint in this adversary proceeding on November 2, 2015 (the "Complaint"). FCB moved for sanctions pursuant to Fed. R. Bankr. P. 9011, requesting $25,012.49 in fees incurred defending against the claims made in the Complaint and another $2,722.50 in expenses accrued in connection with the defense. (FCB's Motion for Sanctions, p. 11, ECF 8 (the "Sanctions Motion").)[1] FCB served its initial Sanctions Motion on November 4, 2015. Heritage did not dismiss the Complaint until January 12, 2016. Heritage objects to the Sanctions Motion because, although the Complaint was not dismissed until after the expiration of the safe harbor period provided under Fed. R. Bankr P. 9011, the Complaint was never served.

For the following reasons, the Court issues monetary sanctions against the Law Office of Weber and Perskie for violations of Bankruptcy Rule 9011(b) in signing the Complaint in this adversary proceeding, and directs the firm to pay $4,744.00 in legal fees and $2,722.50 in expenses to FCB.

## **JURISDICTION**

This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012. This adversary proceeding is a core proceeding

---

[1] Citations to "ECF" are to papers filed on the docket of this adversary proceeding, identified by docket number.

under 28 U.S.C. § 157(b)(2)(E) and (H).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## BACKGROUND

Heritage commenced its bankruptcy case by filing a petition for relief under chapter 11 of the Bankruptcy Code on April 24, 2015.  Heritage's only asset at the time of the filing was a property in Staten Island, located at 132 Hopkins Avenue, Staten Island, New York, 10306 (the "Staten Island Property").  This bankruptcy case primarily concerned a dispute between Heritage and its only major creditor, FCB.  Heritage entered into a loan agreement with Temecula Valley Bank guaranteed by the United States Small Business Administration (the "SBA") on January 13, 2006. (FCB's Motion to Dismiss at p. 3, ECF 3 (the "Motion to Dismiss").)  Heritage, along with Seaport Ice Cream, LLC, an affiliate of Heritage, borrowed $1,625,000.00 from Temecula Valley Bank to buy real property located at 156 East Main Street, Tuckerton, New Jersey (the "Tuckerton Property"), renovate that property, purchase inventory, purchase equipment, pay the SBA guaranty fee and fund soft costs and reserves.  (Id.)

Pursuant to the terms of the agreement between Heritage and Temecula Valley Bank, Heritage granted Temecula Valley Bank a security interest in all of its then owned and after acquired property.  (Id. at 5.)  Heritage also granted Temecula Valley Bank a mortgage on the Tuckerton Property.  (Id. at 6.)  Anthony and Kathleen Donadio, the principals of Heritage, guaranteed the loan.  (Id.)   As additional security for the loan, Heritage and its principals granted Temecula Valley Bank mortgages on the Staten Island Property, and the property located at 26 Maryland Road, Little Egg Harbor, New Jersey (the "Little Egg Harbor Property"). (Id. at 7.) Temecula Valley Bank's interest in the note owed by Heritage and the Donadios was assigned by the FDIC, as receiver for Temecula Valley Bank, to FCB in July, 2009.  (Id. at 8.)  The

mortgages for the Tuckerton Property, the Staten Island Property and the Little Egg Harbor Property were also assigned to FCB at that time.  (Id.)

Heritage defaulted on its obligations under the loan, and FCB sent Heritage a notice of default on December 6, 2011.  (Id. at 9.)  Heritage and its principals entered into a forbearance agreement with FCB on January 2, 2014.  (Motion to Dismiss, Exhibit P, ECF 3-17.)  Heritage defaulted under the forbearance agreement by failing to make the payment that came due on September 13, 2015.  (Motion to Dismiss, p. 10, ECF 3.)  Following this default, Heritage engaged in settlement discussions with FCB. (Id.)  FCB informed Heritage that before FCB would consider any settlement, the Tuckerton Property and associated personal property collateral would have to be liquidated.  (Id.)  FCB suggested that Heritage convey the Tuckerton Property to FCB through a deed in lieu of foreclosure, but Heritage opted instead to sell the Tuckerton Property to a third party for $500,000.  (Id. at 12.)  After the closing on the Tuckerton Property, FCB received the proceeds of the sale and recorded a release of the mortgage on the Tuckerton Property.  Kathleen and Anthony Donadio also executed an acknowledgment of their continuing liability for the remaining deficiency on the loan.  (Id.)

The Complaint alleged eleven causes of action: 1) "failure to act in good faith during negotiations;" 2) "contract violations under New York State Law;" 3) "lender violated New York State trade practice and consumer protection laws;" 4) "[violation of] state real estate statutes;" 5) "[violations of] the fair debtor consumer protection act;" 6) violations of FDIC regulations; 7) "[violations of] the consumer finance protection bureau regulations;" 8) "the sale of [the Tuckerton Property] was a fraudulent transfer pursuant to 11 U.S.C. § 547(b);" 9) "the sale of [the Tuckerton Property] was a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B);" 10) "the sale of [the Tuckerton Property] should be set aside pursuant to 11 U.S.C. § 544(a)(1) and

(b)(1);" and 11) "the sale of [the Tuckerton Property] was not conducted in good faith and breached plaintiffs' confidentiality." (Complaint at p. 10-18, ECF 1.)

Although the Complaint was never served, FCB served the Sanctions Motion pursuant to Fed. R. Bankr. P. 9011 on Heritage, through counsel, on November 4, 2015. The Sanctions Motion states that the claims asserted in the Complaint were baseless and that Heritage and its counsel knew or should have known that at the time the Complaint was filed. (Sanctions Motion p. 4-5, ECF 8.)

FCB filed a motion to dismiss the Complaint on December 11, 2015. A case management conference in this adversary proceeding was scheduled for January 13, 2016. On January 12, 2016, the plaintiffs filed a notice of voluntary dismissal. (Notice of Dismissal of an Adversary Proceeding, ECF 4.) FCB filed a motion to vacate the voluntary dismissal on January 19, 2016, contending that the dismissal should be with prejudice. (Motion to Vacate Debtor's Voluntary Dismissal, ECF 5.)

Heritage's response to the Sanctions Motion, filed on March 10, 2016, argues that the "Adversary Complaint was certified in good faith based upon evidence gathered and was not in violation of Rule 11 or Rule 9011." (Heritage's Affirmation in Opposition to the Sanctions Motion, p. 2, ECF 11.) Heritage argued that the summons and Complaint were never served; that FCB was informed that the Complaint would be amended before service; and that Heritage's objective has been to "resolve the underlying obligation with the least cost possible to the debtor and its estate." (Id. at 8.)

A hearing on the Sanctions Motion was held on March 16, 2016. Heritage's attorney, Nicole Perskie, argued that sanctions were inappropriate because the Complaint had never been served, and that she had notified FCB's counsel that the case would not go forward absent

4

amendments to the Complaint. (Tr. of the March 16 hearing at p. 4-6, ECF 13.) She did not deny that the Complaint was not withdrawn during the 21 day safe harbor provided by Bankruptcy Rule 9011, and FCB's counsel did not represent that the Complaint had ever been prosecuted beyond its filing.

At the hearing on March 16, the Court directed FCB's counsel to provide time records in support of the Sanctions Motion. (Id. at 23.) FCB's counsel's time records show a breakdown of the costs incurred as a result of the Complaint. (Affirmation in Support of Fees and Costs, ECF 12.) The fees and costs sought may be divided into four categories: first, the Sanctions Motion ($1,600); second, the motion to dismiss the Complaint ($13,718); third, the motion to vacate the voluntary dismissal ($4,052); and fourth, hearings on these matters ($2,360). (FCB's Affirmation in Support of the Sanctions Motion, p. 2, ECF 12). The affirmation also shows $2,722.50 in costs incurred by FCB's counsel as a result of the Complaint's joinder of the Chartwell Law Group. (Id.) Heritage's counsel has not responded to FCB's affirmation in support of the Sanctions Motion, by challenging the reasonableness of the fees sought or otherwise.

## DISCUSSION

Bankruptcy Rule 9011(c) permits the court to impose "an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed. R. Bankr. P. 9011 (c). Subdivision (b) of Bankruptcy Rule 9011 provides, an attorney or pro se litigant presenting a pleading, written motion, or other paper to the court is certifying that,

1) It is not being presented for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b). The language of Rule 9011(c) gives the court discretion in determining whether to award sanctions after the court finds a violation of Rule 9011(b).

A party filing a sanctions motion must comply with the procedural requirements of Bankruptcy Rule 9011(c)(1)(A), which requires that a sanctions motion be made separately from other motions or requests; that the motion describe the conduct alleged to violate Fed. R. Bankr. P. 9011(b); and that the motion not be filed with the court unless the challenged pleading has not been withdrawn or corrected 21 days after the sanctions motion has been served. Rule 9011(c)(1)(A) also provides that "if warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."

The substantive standard for imposing sanctions pursuant to Bankruptcy Rule 9011 in the Second Circuit is one of objective unreasonableness. In re Belmonte, 524 B.R.17, 30 (Bankr. E.D.N.Y. 2015). "In order for sanctions to be supported under this test, it must be clear that the motion made has no chance of success under the existing circumstances." In re Gorshtein, 285 B.R. 118, 125 (Bankr. S.D.N.Y. 2002) (Citing In re Spectee Group, Inc., 185 B.R. 146, 159 (Bankr. S.D.N.Y. 1995)). "To constitute a frivolous legal position for purposes of Rule 11, and thus Rule 9011, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." In re Schmelcher, No. 11-61607, 2015 WL 639076, at *8 (Bankr. N.D.N.Y. Feb. 13, 2015), order aff'd, appeal

dismissed sub nom. Schmelcher v. Cty. of Oneida, No. 6:15-CV-00245 (MAD), 2016 WL 297713 (N.D.N.Y. Jan. 22, 2016)(internal citations and quotations omitted).   If a court determines that there has been a violation of Bankruptcy Rule 9011(b), the court has discretion to impose or not to impose sanctions.  In re Belmonte, 524 B.R. 17, 30 (Bankr. E.D.N.Y. 2015).  Courts also have discretion to determine the type of sanctions to impose. Warshay v. Guinness PLC, 750 F.Supp. 628, 640 (S.D.N.Y.1990).

## ANALYSIS

It is clear that each of the claims asserted in the Complaint meets the standard of "objective unreasonableness." In re Gorshtein, 285 B.R. 118, 125 (Bankr. S.D.N.Y. 2002).  The first cause of action stated in the Complaint seeks damages based on "failure to act in good faith during negotiations." (Complaint, p. 10, ECF 1.)  The negotiations in question occurred after Heritage defaulted under its obligations to FCB.  (Motion to Dismiss, p. 21, ECF 3.)  Following a default, a secured creditor has the right to exercise applicable remedies against its collateral; there is no requirement that a secured creditor engage in refinancing negotiations after a default. See Riverview East Windsor, LLC v. CWCapital LLC, 2012 WL 90152 (D. Conn. 2012).  Heritage alleges that FCB did not allow a modification of the loan following the forbearance agreement and instead filed a foreclosure proceeding.  (Complaint, p. 11, ECF 1.)  FCB's alleged actions were not a breach of duty, but an exercise of their rights as a secured creditor.

The second cause of action alleged in the Complaint seeks damages for "contract violations under New York State law." (Complaint, p. 12, ECF 1.)  While the Complaint repeats, reiterates and re-alleges the claims stated in the preceding paragraphs, there is no indication of what violation of New York law is claimed.  The cause of action states only that "the contract specifically dictates New York law as to choice of law and also as to venue;" and that, "the

7

debtor corporation is a New York corporation." (Complaint, p. 12, ECF 1.) Given the lack of any allegation as to what law was violated and what conduct is claimed to constitute a violation of the law, it is objectively unreasonable to believe that such a claim could succeed.

The third cause of action alleges that the "lender violated New York state trade practice and consumer protection laws." (Complaint, p. 12, ECF 1.) Once again, the Complaint fails to allege what law has been violated. The Complaint states, "the Attorney General's Office under Andrew Cuomo sought to hold mortgage companies liable for issues arising during the mortgage-modification process and has used New York State consumer protection and trade laws to protect homeowners" (Complaint, p. 13, ECF 1); however, there is no explanation of how this relates to any claim against FCB or any identification of the law that FCB is alleged to have violated.

The fourth, fifth, sixth and seventh causes of action similarly lack any basis in law. The fourth cause of action states that the lender violated state real estate statutes, but fails to identify the statute that is claimed to have been violated, or to identify the particular conduct that is claimed to constitute a violation of the law. (Complaint, p. 13, ECF 1.) The fifth cause of action states that the lender has violated the "Fair Debtor Consumer Protection Act," but there are no factual allegations attached to that cause of action, and the final paragraph of that cause of action provides, "[b]y reason of the foregoing, the Secured Creditor should be found to be in violation of New York State Real Property Laws." (Complaint, p. 13-14, ECF 1.) The sixth cause of action states that the "lender has violated the FDIC regulations." (Complaint, p. 14, ECF 1.) Again, the Complaint fails to state which regulation is claimed to have been violated or to allege what conduct constitutes the violation. The seventh cause of action states that the "lender has violated the Consumer Finance Protection Bureau regulations." (Complaint, p. 14, ECF 1.) This

8

cause of action fails to state what regulations have allegedly been violated and fails, again, to state any facts that are alleged to demonstrate this breach.

The eighth, ninth and tenth causes of action are pled with greater specificity, but they lack any possible merit under the Bankruptcy Code. The eighth cause of action states that "[t]he sale of [the Tuckerton Property] was a fraudulent transfer pursuant to 11 U.S.C. § 547(b)." (Complaint, p. 14, ECF 1.) Paragraph 111 of the Complaint refers to this alleged fraudulent transfer as a preference. (Complaint, p. 14, ECF 1.) The sale of the Tuckerton Property, referred to in this cause of action, resulted in payment to FCB of proceeds of its collateral, which collateral was acquired outside the 90 day preference period. As a matter of law, this is not a preferential transfer under 11 U.S.C. § 547. In re 360nettworks (USA) Inc., 327 B.R. 187, 190 (Bankr. S.D.N.Y. 2005) ("Under [11 U.S.C.] § 547(b)(5), a transfer to a fully secured creditor is immunized from preference attack because the creditor would have been paid in full in a hypothetical Chapter 7 liquidation by virtue of its realization on its collateral.")

The ninth cause of action states that "the sale of [the Tuckerton Property] was a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B)." (Complaint, p. 16, ECF 1.) The Complaint alleges that Heritage received less than reasonably equivalent value for the transfer of the Tuckerton Property. (Complaint, p. 16, ECF 1.) Heritage's contention in this cause of action does not match the facts of this case as alleged in the Complaint. Heritage did not transfer the Tuckerton Property to FCB, but sold it to a third party, which resulted in what the Complaint refers to as a "fair market value purchase." (Id. at 9.) These facts fail to state a claim that the sale of the Tuckerton Property was for less than reasonably equivalent value. In any event, FCB was not the transferee of the Tuckerton Property; FCB merely received the proceeds of the sale, as it was entitled to.

9

The tenth cause of action alleges that "the sale of [the Tuckerton Property] should be set aside pursuant to 11 U.S.C. § 544(a)(1) and (b)(1)." 11 U.S.C. § 544 permits a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under any applicable law by a creditor holding an unsecured claim…" 11 U.S.C. § 544(b)(1). The proceeds of the sale of the Tuckerton Property were paid to FCB, which held a first priority secured lien on the Tuckerton Property. Such a sale would not be voidable by a hypothetical judgment creditor. As the trustee is stepping into the shoes of such a creditor pursuant to 11 U.S.C. § 544, this sale would not be voidable by a trustee.

The eleventh and final cause of action states that "the sale of [the Tuckerton Property] was not conducted in good faith and breached plaintiffs' confidentiality." (Complaint, p. 18, ECF 1.) Heritage claims that FCB communicated with the purchasers of the Tuckerton Property over the objections of Heritage. (Complaint, p. 18, ECF 1.) Heritage failed to allege any facts to support this conclusory allegation of bad faith conduct.

Although the Complaint violates Bankruptcy Rule 9011(b)(2), the Court has the discretion to determine whether to impose a sanction and to determine the amount of any sanction. Warshay v. Guinness PLC, 750 F.Supp. 628, 640 (S.D.N.Y.1990); see also, Salpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 146 (2d Cir. 1993). The purpose of a sanction under Bankruptcy Rule 9011 is to "deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). In this case, a sanction in the amount of reasonable attorney's fees incurred by the defendant as a result of the filing of the Complaint, to the extent set forth herein, will accomplish that goal. "The starting point in determining an appropriate sanction based upon the cost of attorneys' fees is 'the calculation of the time reasonably expended in responding to the improper signing which is then multiplied by a

reasonable hourly rate.'" In re Cedar Tide Corp., 164 B.R. 808 (E.D.N.Y. 1994) (quoting In re Wonder Corp. of America, 109 B.R. 18, 32 (Bankr. D. Conn. 1989)). "In this Circuit, attorney's fee awards are determined by calculating the 'lodestar' figure, which is based on the number of reasonable hours expended, multiplied by a reasonable hourly rate." Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 62 (E.D.N.Y. 2003).

FCB has provided time records to show the fees it incurred in seeking dismissal of the Complaint. Heritage has not filed any objection to FCB's time records. The time records are summarized on the first page of FCB's affirmation in support; however, the numbers reflected in the summary do not match the un-redacted portions of the provided time records. (Affirmation in Support of the Sanctions Motion, p. 2-19, ECF 12.) The summary shows total legal fees of $21,730, while the records indicate that the fees totaled $21,164.00. (Affirmation in Support of the Sanctions Motion, p. 2-19, ECF 12.) There are also discrepancies in three of the four categories of legal work for which sanctions are sought by FCB. FCB seeks fees of $1,600 incurred drafting the rule 11 motion, while the time records indicate that fees of $2,944 were incurred in drafting the rule 11 motion. (Id.) FCB seeks fees of $13,718 in preparing the motion to dismiss the Complaint; however, time records show that $12,368 in fees were incurred drafting the Complaint. Finally, the summary shows fees of $2,360 incurred as a result of preparing for and attending hearings, but the time records indicate only $1,800 in fees relating to that item. (Id.)

Based on FCB's affirmation in support of the Sanctions Motion, the Court finds that FCB is entitled to fees in the amount of $4,744.00, which represents the fees incurred in drafting the Sanctions Motion and for appearing at the hearings on matters relating to the Complaint. The Court also finds that FCB is entitled to expenses in the amount of $2,722.50. These expenses

11

were incurred by FCB's attorneys, who were required to hire special counsel pursuant to their malpractice insurance, to defend them against allegations made in the Complaint.

The Court declines to award legal fees for drafting the motion to dismiss the Complaint or the motion to vacate a voluntary dismissal. The purpose of sanctions is to deter a similarly situated attorney from engaging in the type of conduct in question. Fed. R. Bankr. P. 9011. In awarding legal fees, the courts of the Second Circuit look to the reasonable number of hours spent on the matter in question. Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 62 (E.D.N.Y. 2003).

In this instance, FCB spent more than a reasonable number of hours moving to dismiss Complaint. Although the Complaint clearly violated Bankruptcy Rule 9011(b), the Complaint was never served, and therefore, no response was ever required. FCB properly served the Sanctions Motion as required by the safe harbor provision of Fed. R. Bankr. P. 9011(c)(1)(A). Although the pleading was not withdrawn in the 21 day window provided by Bankruptcy Rule 9011, the Complaint was voluntarily dismissed; none of the claims in the Complaint were prosecuted. Had the Complaint been withdrawn in the safe harbor period provided by Rule 9011, FCB would still have presumably sought a dismissal with prejudice, and would not have been entitled to costs for that dismissal. Under these facts, the time spent drafting a motion to dismiss the Complaint, and then to have the voluntary dismissal vacated, is not appropriately awarded as a deterrent to the type of conduct engaged in by Debtor's counsel.

## **CONCLUSION**

For the foregoing reasons the Court awards sanctions against Heritage's attorney, the Law Offices of Weber and Perskie, in the amount of $4,744.00 in attorneys' fees and $2,722.50

in expenses, which constitutes approximately 79% of the retainer received by Debtor's counsel in this case.  A separate order will issue.



**Dated: Brooklyn, New York**
**June 2, 2016**

/s/ Carla E. Craig
**Carla E. Craig**
**United States Bankruptcy Judge**